## A99A2184. NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC. v. STRICKLAND.
(526 SE2d 924)

ELDRIDGE, Judge.

The National Council on Compensation Insurance, Inc. ("NCCI"), defendant-appellant, serves as the "Administrator" of the Georgia Workers' Compensation Assigned Risk Insurance Plan under contract with the Georgia Insurance Commissioner. See OCGA § 34-9-133; Rules & Regs. of the State of Ga., § 120-2-38. As Administrator, NCCI receives and reviews applications for eligibility to the Assigned Risk Pool and for completeness, which is the extent of its duties and powers. Rules & Regs. of the State of Ga., § 120-2-38-.09 (4).

In June 1995, Albert Strickland, plaintiff-appellee, sought workers' compensation coverage for himself and his company, Allstar Concrete, from defendant Matrix Insurance Agency ("Matrix"), and

defendant Otis Jones. Jones was an insurance agent at Matrix. Plaintiff told Jones that he wanted workers' compensation coverage for himself and his business. Jones told the plaintiff that there would be a higher premium amount for his inclusion in coverage, which plaintiff agreed to pay. Jones took the information orally from the plaintiff and filled out the application for workers' compensation insurance, which plaintiff signed. The application plainly stated that plaintiff was included within the coverage requested.

However, the policy, when issued, did not cover plaintiff when he was injured on the job, and the assigned insurer denied coverage because the application had been altered by NCCI prior to assignment to exclude the plaintiff from coverage. Plaintiff sued NCCI, Matrix, and Jones over the change in his application which caused him to be excluded from coverage without his consent. NCCI's motion for summary judgment was denied, and it sought discretionary appeal.

After failing to obtain coverage with several insurers who refused to write coverage, Jones applied to NCCI for coverage through the Assigned Risk Pool. OCGA § 34-9-133. Jones sent the application to NCCI to assign coverage to an insurer.

Bernice Landfair, account analyst for NCCI, processed plaintiff's application. Plaintiff's application did not show sufficient payroll for his inclusion within coverage. Had more payroll been shown on the application for the purpose of calculating plaintiff's premium, then plaintiff could have been included in coverage. Landfair testified that she telephoned Matrix and told an unidentified person about the coverage problem. She testified that she told the unidentified person that the plaintiff must fill out an additional form indicating more payroll on the application and pay an additional premium so that he could also be covered. The check that plaintiff gave for the amount of the premium was enough to provide coverage for only one part-time employee and not enough to cover the plaintiff; the correct amount was three times the amount paid. She also indicated that she was told by the unidentified person at Matrix to resolve the problem by excluding plaintiff from coverage. According to Landfair, with such instruction from Matrix, she physically changed plaintiff's signed application to indicate that plaintiff wished to be excluded from coverage and bound the coverage, but did not contact the plaintiff to verify such authorization prior to making the change. NCCI assigned the application to Lumbermen's Mutual Insurance Company, who wrote the coverage. Landfair admitted that she had never spoken to the plaintiff regarding the change that she made to his application which indicated that he wished to be excluded from coverage.

Although Jones was the person handling plaintiff's account at Matrix, he testified that neither Landfair nor anyone else at NCCI

told him about the problem with plaintiff's application. Jones testified that neither he nor anyone else at Matrix authorized NCCI to change plaintiff's application to show that plaintiff wanted to be excluded from coverage.

The insurance binder was prepared and mailed by NCCI to both plaintiff and Jones, after plaintiff had been deleted from coverage. Lumbermen's office issued the policy and mailed it to the plaintiff and Jones. Plaintiff never read either the policy or the binder. Jones received the policy and the binder, and he did not read either one.

1. NCCI contends that the trial court erred in holding that there was a question of fact as to whether NCCI was acting in a fiduciary capacity. We do not agree.

As Administrator under contract with the Insurance Commissioner, NCCI had specifically defined duties and powers; among them was the power to bind insurance coverage for those insurers within the Assigned Risk Pool and to transmit money to such insurer. Thus, each insurer within the Assigned Risk Pool automatically appointed the Administrator as its limited agent for binding coverage, receiving money, and transmitting money and binders. OCGA § 33-23-1 (a) (3); Rules & Regs. of the State of Ga., § 120-2-38-.09 (4). However, NCCI voluntarily stepped aside from its duties as Administrator and gratuitously undertook duties to the plaintiff.

There exists a factual question for the jury as to the role NCCI occupied when it changed plaintiff's application. By changing plaintiff's application without his prior knowledge and consent NCCI acted on plaintiff's behalf as a voluntary agent for the limited purpose of obtaining workers' compensation insurance for the plaintiff's benefit only. See OCGA § 10-6-22; *Simmerson v. Blanks*, 149 Ga. App. 478, 479-480 (2) (254 SE2d 716) (1979); *Bell v. Fitz*, 84 Ga. App. 220, 224-225 (1) (66 SE2d 108) (1951); accord *Armstrong, Cator & Co. v. Pease*, 66 Ga. 70 (1880). "[A] gratuitous agent owes his principal the duty to exercise slight diligence, and a proper appraisal of the agent's conduct encompasses the knowledge which he professes to possess. [Cits.]" *Simmerson v. Blanks*, supra at 480. Failure to follow the instructions of the plaintiff in the application for his individual coverage raises an issue of fact as to gross negligence. See id.; *Bell v. Fitz*, supra at 224-225. There is a question of fact as to whether reliance by Matrix upon NCCI satisfied the element of reliance if the jury believes that someone at Matrix instructed NCCI to change the application on behalf of the plaintiff. If the jury finds that no one at Matrix instructed NCCI to change the application and that NCCI acted on its own, then there was no reliance to create a voluntary agency.

If the jury finds that NCCI acted as agent or subagent in changing plaintiff's signed application, then NCCI acted in a fiduciary

capacity for the plaintiff, as his special agent for such limited purpose, with the assigned insurer, changing the coverage without plaintiff's knowledge or consent. OCGA § 23-2-58. Thus, NCCI acted with apparent authority in presenting the altered application for assignment with Lumbermen's Mutual Insurance Company, and it effected the legal relationship of plaintiff by such change in the application with the insurer's coverage. *Brown v. Little*, 227 Ga. App. 484, 487 (2) (489 SE2d 596) (1997). Thus, the trial court properly found that there was a question of fact as to whether NCCI was acting in a fiduciary capacity. The trial court properly denied NCCI's motion for summary judgment.

2. NCCI contends that the trial court erred in denying its motion for summary judgment on the issue of liability. We agree in part.

(a) Fraud is not a viable cause of action against NCCI by the plaintiff, because there is no evidence of any misrepresentations made by NCCI to the plaintiff upon which he relied to his detriment. *Brown v. Rowe*, 178 Ga. App. 575, 577 (2) (344 SE2d 245) (1986). Absent any communication between NCCI and the plaintiff, there could be no fraud. The trial court erred in failing to grant partial summary judgment on such issue of liability. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991). Therefore, the trial court must vacate its order and enter partial summary judgment on this theory of liability.

(b) As Administrator, NCCI had the power and duty only to receive, review, and assign applications under the Assigned Risk Pool for workers' compensation insurance under its contract with the Insurance Commissioner. Rules & Regs. of the State of Ga., § 120-2-38-.09 (4). In changing and altering the application, instead of rejecting it and requiring a written authorization for the declination of individual coverage by the plaintiff or a supplemental application form, NCCI exceeded its authority as Administrator and gratuitously assumed new duties as a volunteer with different non-contractual duties.

> One who undertakes[ ] gratuitously . . . to render services to another which he should recognize as necessary for the protection of a third person or his things[ ] is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person. . . . [Cit.]

(Punctuation omitted.) *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980); accord *Stelts v. Epperson*, 201 Ga. App.

405, 407 (411 SE2d 281) (1991); *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 837-838 (331 SE2d 899) (1985); *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 523-524 (3) (317 SE2d 853) (1984); see also *Mull v. Aetna Cas. &c. Co.*, 226 Ga. 462, 464 (4) (175 SE2d 552) (1970) (Felton, J., dissenting).

NCCI voluntarily undertook to perform Matrix's duty to plaintiff regarding the change in the plaintiff's insurance application. Under NCCI's version, it failed to verify that plaintiff authorized Matrix to delete him from coverage, and thereby, NCCI increased plaintiff's risk of harm from lack of workers' compensation coverage. Under Matrix's version, NCCI acted unilaterally, without authority from either the plaintiff or Matrix, in making the change and deleting plaintiff from coverage. Under either version, NCCI acted as a gratuitous volunteer outside of its authority as Administrator.

Under such facts and circumstances, plaintiff had no reason to foresee NCCI's voluntary tortious actions, so that the failure to read the binder and policy are jury questions as to the defenses of contributory negligence, comparative negligence, causation, and mitigation of damages. Except in plain and palpable cases, summary judgment on these issues is not appropriate. See *Robinson v. Kroger Co.*, 268 Ga. 735, 739-740 (1) (493 SE2d 403) (1997). This is not such a case; the trial court properly denied summary judgment to NCCI.

(c) If NCCI was either the agent or subagent of the plaintiff so that a fiduciary duty existed, then plaintiff had a duty to read and examine the policy of insurance, contracted for through NCCI, to determine that the coverage from the readily apparent provisions, i.e., plain and unambiguous language of the policy, was correct. See *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 5 (427 SE2d 18) (1992); *Turner, Wood & Smith, Inc. v. Reed*, 169 Ga. App. 213, 214 (311 SE2d 859) (1983); *Ethridge v. Assoc. Mutuals*, 160 Ga. App. 687, 688-689 (288 SE2d 58) (1981). This case involves the act of NCCI deleting coverage, i.e., an active tort, while the cited cases involve omission to act, i.e., failure to obtain the right coverage. In this case, the evidence was in dispute as to whether NCCI acted as an agent or subagent, so that summary judgment should not be granted as to plaintiff's failure to read the policy or binder or as to whether NCCI acted as a volunteer on its own, without the knowledge of either the plaintiff or Matrix, to change the application. Therefore, the trial court properly denied the motion for summary judgment on the basis of liability.

*Judgment affirmed in part and reversed in part with direction. Blackburn, P. J., and Barnes, J., concur.*

*Harman, Owen, Saunders & Sweeney, David C. Will*, for appellant.

*Smith, Wallis & Scott, Kenneth A. Smith*, for appellee.