A03A2418. MacINTYRE & EDWARDS, INC. v. RICH et al.
A03A2419. GLEN FALLS INSURANCE COMPANY et al.
v. RICH et al.
(599 SE2d 15)

JOHNSON, Presiding Judge.

These interlocutory appeals involve insufficient homeowner's insurance coverage for a fire loss. The appeals concern the duties of an insurer and an insurance agent to notify an insured of policy changes, and the responsibility of the insured to read policy documents. In these appeals, the insurance company, its adjuster, and the insurance agency challenge the trial court's denial of their motions for summary judgment.

Scott and Margaret Rich own real estate and personal property in Thomasville. Scott Rich has been employed as a director of corporate insurance for Flowers Foods, Inc. since 1977. In that role, Scott Rich places insurance coverage, negotiates renewals, and handles claims. He is considered Flowers' "expert" on insurance matters.

In 2000 the Riches requested that insurance agency MacIntyre & Edwards, Inc., place their homeowner's coverage with Glen Falls Insurance Company. Per Scott Rich's request, the policy provided for an unlimited guaranteed replacement cost. In the fall of 2000, Glen Falls notified Leroy Edwards of MacIntyre & Edwards that renewal policies for 2001 would have limits or caps on coverage. For the Riches, this meant that they would be insured for 125 percent of the location limit[1] of $922,000; this capped their coverage at $1,152,500. Edwards received the notice but did not review it and did not relay the information to the Riches.

When Scott Rich received his renewal documents in the mail, he glanced at the documents, but did not read them except to verify that the location was correct and the automobiles were listed as insured. He admitted that he never reads his insurance policy or renewals. His wife did not review the documents at all.

In April 2001 the property was largely destroyed by fire. The insurer was notified. According to the Riches, Glen Falls adjuster Jonathan Smith declined to place tarps over the property. Since Scott Rich was under the impression that the house had guaranteed replacement coverage and that Glen Falls was going to restore it to its previous condition, he did not insist on any protective coverings being placed over the structure.

---

[1] "Location limit" is defined in the policy as the total amount of insurance available for the dwelling, contents, and other structures at the location.

Shortly after the fire, Scott Rich read the renewal documents and realized that a cap had been placed on the replacement coverage. He called his insurance agent, Leroy Edwards, who told him not to worry because the cap in the policy had been rescinded and would not be enforced. Adjuster Smith responded to Edwards' request for a policy endorsement regarding the waiver of the cap with a letter setting forth an example of how the Riches' loss would be calculated. From this Edwards and Scott Rich concluded that the Riches had unlimited replacement coverage. The property remained unprotected from the date of the loss through July 2001. In July 2001 Smith informed Edwards that there was in fact a cap on the Riches' coverage. Edwards in turn informed Scott Rich of the cap.

The Riches brought suit against the insurance company (Glen Falls), the company's adjuster (Smith), and the insurance agency (MacIntyre & Edwards). As to Glen Falls and Smith, the Riches alleged that because they relied on the insurer's representations regarding coverage, they did not feel compelled to do everything possible to protect the property at their own expense. The Riches claim that this caused more than $250,000 in unnecessary damage to the residence. As to MacIntyre & Edwards, the Riches argue that the agency failed to inform them of the change in coverage from unlimited to capped coverage, that the agency knew that the Riches wanted unlimited replacement coverage, and that as a result of the agency's failure to inform the Riches of the changes in the renewal policy, the Riches suffered damages in excess of $250,000. The defendants moved for summary judgment. The motions were denied in separate orders. Both orders were certified for immediate review and separate applications for immediate review followed. We granted both applications. For the reasons that follow, we reverse the judgment of the trial court in both cases.

### Case No. A03A2418

1. MacIntyre & Edwards contends that the trial court misinterpreted the law regarding the duty of an insured to read his or her insurance policy, and thus found irrelevant factual issues to be material for summary judgment purposes. MacIntyre & Edwards argues that because the renewal package received by the Riches contained an endorsement clearly referencing a 125 percent cap on guaranteed replacement cost and a memorandum explaining the cap, the Riches cannot blame the agency for their own failure to discover that the renewal policy from Glen Falls did not provide for unlimited replacement coverage.

In general, an insured has an obligation to read and examine an insurance policy to determine whether the coverage desired has been

furnished.[2] If an examination of the policy would have made it readily apparent that the desired coverage was not issued, the policyholders' failure to examine the policy bars recovery against the insurer or its agent for negligent failure to provide coverage.[3]

The renewal package Scott Rich received in December 2000 contains an endorsement instituting a 125 percent cap on guaranteed replacement cost, and a memorandum explaining several coverage changes including the 125 percent cap. The endorsement contained in the package places a cap on guaranteed replacement cost. The endorsement states, in relevant part:

> [I]f at the time of the loss the residence value indicated on the Coverage Summary is less than the current replacement cost, we will:
> a. Increase the residence value to equal the smallest of:
> (1) the current replacement cost; or
> (2) 125% of the residence value shown on the coverage summary.

The accompanying memorandum begins with a large, bold heading stating "**It's Important For You To Know**," and then, in large bold capital letters: "**THERE HAVE BEEN SOME CHANGES TO YOUR RENEWAL POLICY.**" The memorandum then states:

> In order to keep your insurance premiums as low as possible, some of the coverages that apply to your policy have been revised with your renewal. The highlights of these changes are as follows:
>
> **G1-14165-D Amendment of Home and Dwelling Fire Provisions**
>
> We have changed the maximum amount of coverage you now have for your home to 125% of the replacement amount shown on the Coverage Summary. Previously, this amount was unlimited.

Scott Rich did not read the new endorsement or explanatory memorandum. He admitted that had he read the renewal page, he

---

[2] *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28 (2) (561 SE2d 169) (2002).
[3] Id.

would have understood the cap. Margaret Rich did not read the documents at all. It is clear that the Riches breached their duty to examine the renewal documents.[4]

The Riches, however, rely upon the exception to the rule requiring them to read their policy. The exception is that if an agent holds himself out to be an expert in insurance, and the insured relies upon the agent's expertise to identify the insured's needs and procure the correct amount of type of coverage, i.e., do more than just issue a policy, the insured is relieved of the responsibility to minutely examine the policy.[5] Scott Rich says he relied upon the agent's word that he had unlimited replacement coverage. But even if he did, that would not absolve him of his responsibility.

First, an insured's duty to read the policy remains if an examination of the policy would have made it readily apparent that the coverage contracted for was not issued.[6] In other words, if it is readily apparent that the insured did not get the coverage he requested, the duty to read will still bar a lawsuit against the agent even if the insured relied upon the agent's expertise.[7]

We agree with the agency that there is no genuine issue of material fact regarding whether the policy change was readily apparent. A change is readily apparent if it is plain and unambiguous.[8] The memorandum clearly states that the maximum amount of coverage on the home is changing from an unlimited amount to the fixed amount of 125 percent of the replacement amount shown on the coverage summary. And there was language and type which should have attracted the Riches' attention to the fact that their coverage was no longer unlimited. The change would be readily apparent to an insured who read the renewal documents. Additionally, Scott Rich, an insurance executive, admitted that the cap was readily apparent to him once he read the renewal documents.

Second, the Riches have not shown that they relied upon the agent's expertise. To show reliance, the Riches would have to show that the agent performed expert services on their behalf under circumstances in which they had to rely on the expertise of the agent to identify and procure the correct amount of insurance.[9] Finally, even if the Riches did rely upon their agent's expertise, that would

---

[4] See *King v. Brasington*, 252 Ga. 109-110 (312 SE2d 111) (1984).

[5] See *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 271 (210 SE2d 801) (1974); *McCoury*, supra.

[6] *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 4-5 (427 SE2d 18) (1992).

[7] Id.; *Turner, Wood & Smith, Inc. v. Reed*, 169 Ga. App. 213, 214-215 (311 SE2d 859) (1983).

[8] See *Nat. Council on Compensation Ins. v. Strickland*, 241 Ga. App. 504, 508 (2) (c) (526 SE2d 924) (1999).

[9] See *Atlanta Women's Club*, supra at 4.

have relieved them of the duty to *minutely* examine the policy,[10] not of all responsibility to examine it.[11] Thus, the trial court erred in finding there was a genuine issue of material fact regarding whether the cap was readily apparent.

We also agree with MacIntyre & Edwards that the trial court erred in finding genuine issues of material fact concerning whether the agency held itself out as an expert in the insurance field. Even assuming the Riches relied on the agents as experts, given the readily apparent nature of the coverage, the duty to read still bars a lawsuit against the agency.[12]

Finally, no genuine issues of material fact remain regarding whether the agency was negligent in not informing the Riches of the coverage change. As discussed above, the Riches received the renewal documents and had a duty to read the declaration and memorandum which set out the policy changes. Their failure to fulfill their obligation bars any recovery from the insurance agency.[13] The trial court erred in denying MacIntyre & Edwards' motion for summary judgment.

## Case No. A03A2419

2. Glen Falls argues that the trial court erred in denying its motion for summary judgment regarding the Riches' negligent misrepresentation claim.[14] According to Glen Falls, there is no evidence that it made false claims about the existence or absence of a cap, that even if such claims were made, the Riches made no effort to ascertain the truth or falsity of such assertions, and that Scott Rich was fully aware that Glen Falls at no time did anything to secure the property. Glen Falls further argues that Scott Rich is himself an expert in insurance matters, and that any exception to the "readily apparent doctrine" applies only to actions involving insurance agents and not the insurance companies who issue the policies.[15]

The Riches counter that Glen Falls was properly denied summary judgment on its negligent misrepresentation claim because six

---

[10] See *Wright Body Works*, supra.

[11] See *Atlanta Women's Club*, supra at 5.

[12] See id.

[13] See *Turner, Wood & Smith*, supra.

[14] A cause of action for negligent misrepresentation requires that: (1) the defendant negligently supplied false information to foreseeable persons; (2) such persons reasonably relied upon that information; and (3) such persons suffered economic harm proximately resulting from that reliance. *Hardaway Co. v. Parsons, Brinckerhoff, Quade &c.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997).

[15] See generally *McCoury*, supra; *Greene v. Lilburn Ins. Agency*, 191 Ga. App. 829, 830 (383 SE2d 194) (1989).

weeks after the fire Smith sent a letter stating the Riches had guaranteed replacement coverage. Smith failed to secure the property, saying the Riches had adequate coverage and the contractor would protect the property. Scott Rich urges that his reliance was reasonable, since the policy did not make it readily apparent that he had limited coverage. And when Scott Rich discovered the cap, he called Edwards who then told him the cap was removed.

Assuming the Riches' version of the facts is correct, as we must for summary judgment purposes, the defendants misinformed them about the extent of coverage for several months while the property was exposed to the elements. In light of this, it is difficult to understand why an insurance company or agency would not have made a greater effort to make certain that their insureds were thoroughly apprised of such a significant change in coverage. Nevertheless, the renewal package received by the Riches *before the fire occurred* was at the very least sufficient to put them on notice that their replacement coverage was no longer unlimited. Had they simply read the information provided to them, *as they were required to do*, they could have addressed the potential coverage problem before their home was destroyed by fire, and before further damage occurred. The law does not allow the Riches to shift blame for their own failure to read the clear policy information provided to them merely because their insurer (and insurance agency) failed to make an extra effort to convey the information — especially where, as here, one of the insureds is himself knowledgeable in insurance matters. The denial of summary judgment to Glen Falls must be reversed.

*Judgments reversed. Blackburn, P. J., Ruffin, P. J., Eldridge, Phipps and Ellington, JJ., concur. Mikell, J., dissents.*

MIKELL, Judge, dissenting.

While I concur with the majority's opinion in Division 1 (Case No. A03A2418), I must respectfully dissent in Division 2 (Case No. A03A2419) because I believe that a jury issue remains concerning whether it was reasonable for Scott Rich to rely on Smith's representation to Edwards that the Riches had guaranteed replacement coverage. As the majority explains, Smith was the agent for Glen Falls, and Edwards was Scott Rich's agent. When Smith wrote to Edwards on May 24, 2001, he asserted unequivocally that "Mr. Rich has guaranteed replacement cost on his structure. Therefore, . . . we would honor the actual cost of repairs to that actual amount." I realize that Scott Rich received the amended policy before the fire, and that it plainly and obviously stated the limits on replacement coverage. I also agree that Scott Rich should have read the new policy. However, the explicit statement by the agent of Glen Falls, who had at least apparent authority to "adjust" the loss, could be construed as a

written, express, unequivocal change to the policy. In fact, the policy itself provides: "A waiver or change of any policy provision must be in writing from us." Therefore, it appears that changes or waivers were contemplated by Glen Falls, and it is an issue of fact whether the letter from Smith could be considered a written change from Glen Falls, i.e., "from us." See generally *Ga. Farm &c. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324-325 (548 SE2d 67) (2001) (insurance contract construed most strongly against insurer and liberally in favor of insured to afford coverage).

It is a jury question whether under these circumstances, it was reasonable for Scott Rich to rely on Smith's representation to his agent. Accordingly, I would affirm the denial of summary judgment to Glen Falls. Damages would of course be limited to any additional damage to the house caused by its exposure to the elements between May 24, 2001, and approximately July 17, 2001, when Smith informed the Riches of the cap on their coverage.

DECIDED MARCH 22, 2004 —
RECONSIDERATION DENIED APRIL 14, 2004 — 

*Fuller, Johnson & Farrell, Patrick J. Farrell, Jr., Michael J. Thomas*, for appellant (case no. A03A2418).

*Young, Thagard, Hoffman, Scott & Smith, Daniel C. Hoffman*, for appellants (case no. A03A2419).

*Savage, Turner, Pinson & Karsman, Stanley Karsman, Ashleigh R. Madison*, for appellees.