**TELLEPSEN BUILDERS, L.P., Appellant,**

v.

**KENDALL/HEATON ASSOCIATES, INC. and CBM Engineers, Inc., Appellees.**

No. 01–08–00295–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 15, 2010.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Tellepsen Builders, L.P. appeals from summary judgments in favor of Kendall/Heaton Associates, Inc. and CBM Engineers, Inc. In its sole issue, Tellepsen asserts that the trial court erred by interpreting the term "property and equipment insurance" in a waiver-of-subrogation clause to include commercial general liability insurance. We reverse the summary judgments and remand for further proceedings.

### Background

The contracts in dispute relate to a construction project known as the Phase One Expansion of the Camp Allen Retreat and Conference Center (the Retreat). The owner of the Retreat, the Protestant Episcopal Church Council for the Diocese of Texas (the Council), entered into a contract with Tellepsen, whereby Tellepsen agreed to act as the general contractor for additions and renovations to the Retreat. This contract was based upon a standard form agreement promulgated by the Associated General Contractors of America (AGC).[1] The contract between Tellepsen and the Council reflected numerous substantive revisions to the standard form of agreement as promulgated by the AGC, including revisions to provisions relating to indemnity[2] and insurance.[3]

Jacqueline S. Cooper, Michelle E. Robberson, Raymond Douglas Rees, Cooper & Scully, P.C., Dallas, TX, John Wesley Raley, Cooper & Scully, P.C., Houston, TX, for Appellant.

Bryan Rutherford, Gregory N. Ziegler, MacDonald Devin, P.C., Dallas, TX, John P. Cahill, Jr., Hays, McConn, Rice & Pickering, P.C., Houston, TX, for Appellees.

1. The contract was a revised version of the "Standard Form of Design–Build Agreement and General Conditions Between Owner and Contractor (Where the Basis of Payment is the Cost of the Work Plus a Fee, with a Guaranteed Maximum Price Option)," which was Document No. 410 promulgated by the AGC.

2. For example, Tellepsen and the Council deleted from their contract section 3.4.6 of the form, which otherwise would have required the Council to indemnify Tellepsen and its subcontractors, including Kendall and CBM, from claims arising from performance of work in any area affected by hazardous materials.

3. For example, Tellepsen and the Council in-

Tellepsen engaged several subcontractors to perform specific tasks for the Retreat project. Tellepsen entered into a subcontract with Kendall to perform architectural design work, and it entered into a separate subcontract with CBM to perform structural engineering and design work. Both the Kendall and CBM subcontracts were based upon standardized form agreements promulgated by the AGC.[4] In both subcontracts, references to "Contractor" refer to Tellepsen. In their respective subcontracts, Kendall and CBM are each individually referred to as "Architect/Engineer."

Both subcontracts state that the "Contract Documents govern the relationship between the Contractor and the Architect/Engineer." Each subcontract defines the "Contract Documents" to consist of the subcontract itself, including exhibits identified in the subcontract, plus written amendments to the subcontract as agreed to by the parties. The contract between Tellepsen and the Council is not listed as an exhibit to either of the subcontracts at issue, although both subcontracts expressly reference Tellepsen's agreement with the Council. The subcontracts both include a merger clause, stating that "[t]his Agreement represents the entire agreement between the Contractor and the Architect/Engineer and supersedes all prior negotiations, representations and agreements, either written or oral."

Both subcontracts required the Architect/Engineer to carry a commercial general liability insurance (CGL) policy listing Tellepsen as an additional insured. Both subcontracts also contain the following waiver-of-subrogation clause, which is at the heart of the controversy before the Court:

> **WAIVER OF SUBROGATION** The Contractor [Tellepsen] and Architect/Engineer [Kendall or CBM] waive all rights against each other and the Owner [the Council], Subcontractors and Subsubcontractors for loss or damage to the extent covered by property or equipment insurance, except such rights as they may have to the proceeds of such insurance.

The subcontracts do not expressly define the term "property or equipment insurance."

Several years after the Retreat was completed, the Retreat began showing signs of structural and water damage. The Council demanded that Tellepsen repair the defects. Tellepsen performed the repairs and sought reimbursement from its CGL insurance carrier, Zurich American Insurance Company. Zurich honored the claim under the CGL policy and reimbursed Tellepsen $841,042 for the repairs.[5]

Tellepsen, as subrogor of Zurich, claimed that Kendall and CBM, among others, were responsible for design and construction defects that caused the damages suffered by the Council. Tellepsen filed suit against its subcontractors, alleging negligence, breach of contract, and breach of warranty. Tellepsen additionally named as defendants First American

---

serted an additional provision into section 8.2.10 of their contract, specifying that "CGL and Umbrella/Excess Liability insurance will be provided by [Tellepsen] at a cost of $.0065 of the [guaranteed maximum price (GMP)] amount."

4. The Kendall and CBM subcontracts were based on the Standard Form of Agreement Between Contractor and Architect/Engineer for Design–Build Projects, which was Document No. 420 promulgated by AGC.

5. The record before us does not reflect whether Tellepsen presented a claim for reimbursement under any other insurance policy, nor does it reflect whether Zurich ever disputed coverage under the CGL policy.

Group Construction f/k/a National Framing Contractors and Advanced Concrete Surfaces, Ltd. f/k/a Gypsum Floors of Texas, Inc. After the trial court granted summary judgment in favor of Kendall and CBM, the trial court severed the claims against Kendall and CBM into this separate action so that Tellepsen could appeal the summary judgment rulings. Accordingly, these other defendants are not parties to this appeal.

Both Kendall and CBM filed Rule 166a(c) motions for summary judgment, asserting that the waiver-of-subrogation clauses in their subcontracts, which apply to "loss or damage to the extent covered by property or equipment insurance," precluded Tellepsen from seeking recovery from them for property damage covered by Tellepsen's CGL insurance policy. Tellepsen responded that the waiver-of-subrogation clauses did not apply because Tellepsen's CGL policy was not "property or equipment insurance" as required for the application of those clauses, but Tellepsen did not file its own motion for summary judgment confirming its proposed interpretation.

The trial court granted summary judgments in favor of both Kendall and CBM, in each case ordering that Tellepsen take nothing. This appeal ensued.

## Analysis

■ On appeal, Tellepsen argues that the trial court erred in granting the summary judgments in favor of Kendall and CBM. Tellepsen contends that the waiver-of-subrogation clauses applied only to claims covered by property or equipment insurance, and not to claims covered by CGL insurance. In support of this contention, Tellepsen argues that both industry custom and the law recognize that "property insurance" is distinct from "liability insurance." Tellepsen contends that its

interpretation is also supported by language in its separate contract with the Council, and by separate provisions in the subcontracts with Kendall and CBM which provided for mutual indemnity as between Tellepsen and its subcontractors, and which required those subcontractors to maintain professional liability insurance.

## I. Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life Accid. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). When reviewing a summary judgment motion, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett,* 164 S.W.3d at 661; *Knott,* 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

## II. Rules of Contract Construction

When construing a written contract, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). We must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *J.M. Davidson,* 128 S.W.3d at 229; *Coker,* 650 S.W.2d at 393. All contractual provisions should be considered with reference to the

entire instrument, and no single provision taken alone should be controlling. *J.M. Davidson*, 128 S.W.3d at 229. Terms are given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

If the written instrument is so worded that it can be given a definite or certain legal meaning, then the contract may be construed as a matter of law. *Coker*, 650 S.W.2d at 393. An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex.2008); *see also Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (per curiam).

When a contract contains an ambiguity, summary judgment is precluded because interpretation of the contract becomes a fact issue. *Coker*, 650 S.W.2d at 394 (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1980)); *Simpson v. GEICO Gen. Ins. Co.*, 907 S.W.2d 942, 945 (Tex. App.-Houston [1st Dist.] 1995, no pet.). A simple lack of clarity or disagreement between parties does not render a term ambiguous. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999). Rather, an ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. *Id.* For an ambiguity to exist, both potential meanings must be reasonable. *Id.* Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394.

## III. Summary Judgment on Interpretation of Subcontracts

We now turn to the interpretation of the waiver-of-subrogation clauses, which provided: "The Contractor and Architect/Engineer waive all rights against each other and the Owner, Subcontractors and Sub-subcontractors for loss or damage to the extent covered by property or equipment insurance, except such rights as they may have to the proceeds of such insurance."

### A. Subcontractors' Arguments

The argument advanced by appellants Kendall and CBM, both in the trial court and on appeal, is essentially a plain-English approach to determining an unambiguous meaning of "property and equipment insurance." Kendall asserts that the term "property or equipment insurance" means "an insurance policy that provides coverage for property damage." Similarly, CBM asserts that the term "includes any type of insurance that covered the property damage to the project." Their summary-judgment arguments thus rest on the following syllogism: the Council suffered damage to property; Tellepsen's CGL insurance policy covered the damage to the Council's property; therefore the damage was covered by "property" insurance and Tellepsen's subrogation claim is waived. In addition, CBM contends that its approach to interpreting "property insurance" is consistent with the Texas Supreme Court's interpretation of the term "property damage" in *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1 (Tex.2007). Based on a detailed analysis of the CGL policy at issue in that case, the Texas Supreme Court concluded that damage to a home built by a general contractor, and arising from that contractor's own defective construction, was "property damage" covered by the CGL policy and giving

rise to a duty to defend. *Lamar Homes*, 242 S.W.3d at 5–16.

## B. Tellepsen's Arguments

In response to the summary judgment motions, Tellepsen argued that the subcontracts' references to "property ... insurance" connote a particular kind of insurance policy which is distinguishable from liability insurance, such as the CGL policy provided to Tellepsen by Zurich in this case. Tellepsen contends that a property insurance policy is first-party insurance that protects the insured's own assets against specific perils, such as fire or flooding. *See, e.g.*, 4 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 11:106, at 33637 (2002) ("Property coverage protects an insured from loss to property in which it has an insurable interest when the loss is caused by certain covered 'causes of loss' or 'perils.' "); *see also Warrilow v. Norrell*, 791 S.W.2d 515, 527–28 (Tex.App.-Corpus Christi 1989, writ denied) (distinguishing property loss coverage under first-party insurance policy from liability coverage under third-party insurance policy); *Highlands Ins. Co. v. City of Galveston ex rel. Bd. of Trustees of Galveston Wharves*, 721 S.W.2d 469, 471 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of the loss.") (citing *Maryland Cas. Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex.1966)); *McBroome-Bennett Plumbing, Inc. v. Vil-*

*la France, Inc.*, 515 S.W.2d 32 (Tex.Civ. App.-Dallas 1974, writ ref'd n.r.e.); *Cumis Ins. Society, Inc. v. Republic Nat'l Bank*, 480 S.W.2d 762 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).[6]

According to Tellepsen, property insurance is distinguished from liability insurance, which is "[a]n agreement to cover a loss resulting from the insured's liability to a third party.... The insured's claim under the policy arises once the insured's liability to a third party has been asserted." Black's Law Dictionary 806 (7th ed. 1999). The Fourteenth Court of Appeals has acknowledged the conceptual distinction between liability insurance and property insurance:

> We understand the distinction between property insurance and liability insurance. Many policies involve both. A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of the loss. Property insurance policies are "intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster; unless the insured has sustained an actual loss, the insurer has no liability." Liability policies, on the other hand, insure against loss arising out of legal liability, usually based upon the assured's negligence.

*Highlands Ins. Co.*, 721 S.W.2d at 471 (internal citations omitted). The distinction has been observed by other courts and authorities as well. *See, e.g., Warrilow*, 791 S.W.2d at 527–28 (distinguishing prop-

---

**6.** While not as clearly defined, the term "equipment insurance" as it appears in case law is typically used to mean property insurance that limits coverage to equipment. *See, e.g., Rogers & Sons, Inc. v. Santee Risk Managers, LLC*, 279 Ga.App. 621, 631 S.E.2d 821, 822 (2006); *Waddell v. C.I.R.*, 86 T.C. 848,

868, 1986 WL 22124 (1986); *Stroud v. N.W. Nat'l Ins. Co.*, 360 So.2d 528, 528 (La.App. 1978); *Millwrights, Inc. v. Bituminous Fire & Marine Ins. Co.*, 565 F.2d 382, 382 (6th Cir. 1977); *Gardner–Denver Co. v. Dic–Underhill Constr. Co.*, 416 F.Supp. 934, 935 (D.C.N.Y. 1976).

erty loss coverage under first-party insurance policy from liability coverage under third-party insurance policy); *Gap, Inc. v. Fireman's Fund Ins. Co.*, 11 A.D.3d 108, 782 N.Y.S.2d 242, 244 (2004); 4 Bruner & O'Connor, *supra*, § 11:106, at 337 ("Unlike CGL coverage—which protects the insured against claims of third parties arising out of its acts or omissions, resulting in bodily injury or property damage—property damage is first-party coverage.").[7]

Tellepsen also argues that the interpretation proposed by Kendall and CBM would render other provisions in the subcontracts meaningless. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006) (stating that a contract should be read so that no provision is rendered meaningless). Specifically, Tellepsen contends that Kendall and CBM's proposed interpretation would render meaningless two indemnity clauses included in both subcontracts:

> 7.1.1 In addition to any liability or obligation of the Architect/Engineer to the Contractor that may exist under any other provision of this Agreement or by law or otherwise, to the fullest extent permitted by law the Architect/Engineer shall defend, indemnify and hold harmless the Contractor and Owner and their respective officers, agent, employees and Subcontractors from and against claims, actions, proceedings, liabilities, losses, damages, costs and expenses, including legal fees, which the Contractor and Owner and their respective officers, agents and employees may sustain by reason of any [negligent[8]] act or omission by the Architect/Engineer, its officers, agents, employees or subcontractors, arising out of the Architect/Engineer's work.
>
> 7.1.2 To the fullest extent permitted by law, the Contractor agrees to defend, indemnify and hold harmless the Architect/Engineer, its officers, agents, employees from and against claims, actions, proceedings, liabilities, losses, damages, costs and expenses, including legal fees, which the Architect/Engineer, its officers, agents and employees may sustain by reason of any act or omission by the Contractor, its officers, agents, employees or subcontractors, arising out of the Contractor's work.

These provisions are evidence of the parties' intent that a right of indemnity exist in favor of the Contractor or the Architect/Engineer, and against the opposite party, as circumstances may require, in the event of a claim against one arising from the negligence of the other. Under the construction of the waiver-of-subrogation clause proposed by Kendall and CBM, these provisions arguably could be rendered meaningless when the indemnitee

---

7. Likewise, courts have also recognized that equipment insurance is separate and distinct from liability insurance. *See Shaffer v. Stewart Constr. Co., Inc.*, 865 So.2d 213, 218 (La. App.2004); *Great Plains Equip., Inc. v. N.W. Pipeline Corp.*, 132 Idaho 754, 979 P.2d 627, 636 (1999); *King v. Employers Nat'l Ins. Co.*, 928 F.2d 1438, 1446 (5th Cir.1991); *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 133 (Minn.1984) (Wahl, J., dissenting); *Serv. Employees' Int'l Union, Local No. 22 v. Roseville Community Hosp.*, 24 Cal.App.3d 400, 101 Cal.Rptr. 69, 71 (1972).

8. In Kendall's subcontract with Tellepsen, the contracting parties agreed to the handwritten insertion of the word "negligent" as indicated in brackets above. This modification to the form contract was not made in the subcontract between CBM and Tellepsen.

also has third-party insurance coverage, such as a CGL policy.

## C. Application of Summary Judgment Standard

As the movants seeking summary judgment, it was the burden of Kendall and CBM to establish that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In the course of our de novo review, we must indulge every reasonable inference in favor of non-movant Tellepsen, and resolve any doubts in favor of Tellepsen. *Dorsett*, 164 S.W.3d at 661.

Although Kendall and CBM are correct that the plain language of the waiver-of-subrogation clauses can be read to mean that the parties waived any (or "all") subrogation rights with respect to property damage claims,[9] Tellepsen correctly observes that the contracts' indemnity provisions suggest a possible different reading, one that depends not on the type of covered damage but instead on the type of insurance coverage—first-party or third-party. Our effort to harmonize these indemnity provisions with the waiver-of-subrogation clause, *see J.M. Davidson*, 128 S.W.3d at 229, does not compel us to agree with Tellepsen's proposed interpretation is the only reasonable one as a matter of law in this case. Unlike other cases in which courts have reached that conclusion,[10] the subcontracts at issue here do not expressly require Tellepsen to obtain first-party property insurance, so as to demonstrate that the parties intended the waiver-of-

subrogation clause to apply only to "property insurance" in the sense suggested by Tellepsen.

We thus hold that the contract as a whole raises an ambiguity as to the parties' intent when they agreed to "waive all rights against each other ... for loss or damage to the extent covered by property or equipment insurance." Here, the ambiguity is evident from the contracts themselves, without any reliance on parol evidence of intent, because the waiver-of-subrogation clause cannot be given a certain or definite interpretation in light of all of the provisions of the contract. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex.2006); *J.M. Davidson*, 128 S.W.3d at 229.

## D. Parol Evidence

■ On appeal, both parties have attempted to rely on extra-contractual evidence in support of their interpretation of the agreement. The subcontracts at issue included merger clauses, stating that each subcontract represented the entire agreement and superseded all prior negotiations, representations and agreements, either written or oral. The contracts at issue are thus integrated agreements, subject to the application of the parol evidence rule. *See, e.g., Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (parol evidence rule is particularly applicable when a written contract contains a merger clause). As we have held that the contracts are ambiguous as to the meaning of the waiver of subrogation clause, on

9. *See, e.g.*, BLACK'S LAW DICTIONARY 875 (9th ed.2009) (defining "property insurance" as "An agreement to indemnify against property damage of destruction.—Also termed *property-damage insurance*.").

10. *See, e.g., Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 829–

30 (Mo.Ct.App.2004) (relying on contractual property-insurance procurement requirement, along with waiver-of-subrogation clause, as evidence of parties' intent "to shift the risk of each other's loss to the insurer to the extent the loss is covered by property insurance").

remand the trial court may consider appropriate extrinsic evidence. *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 521 (Tex.1995).

## Conclusion

We reverse the judgment of the trial court. We remand the case to the trial court for further proceedings consistent with this opinion.