A07A1881. TRAINA ENTERPRISES, INC. v. CORD & WILBURN, INC. INSURANCE AGENCY.
(658 SE2d 460)

MIKELL, Judge.

Traina Enterprises, Inc. ("TEI"), brought suit against its insurance agent, Cord & Wilburn, Inc. Insurance Agency ("C&W"), seeking to recover damages resulting from agent Joseph Wilburn's alleged

---

failure to procure the property insurance coverage TEI desired. The trial court granted C&W's motion for summary judgment and TEI appeals. For reasons that follow, we reverse.

1. After noticing that its brief in support of summary judgment was missing from the record, C&W moved that the appellate record be supplemented to include the brief if this Court feels that it is a necessary or helpful part of the record. Because the brief is not essential for appellate review, the motion is hereby denied.

C&W also filed a motion for leave to file supplemental brief pursuant to Court of Appeals Rule 27 (a), seeking to respond to issues and arguments first raised by TEI in its reply brief. The motion is hereby granted, and we shall consider the arguments set forth therein.

2. TEI contends that the trial court erred in granting summary judgment to C&W because issues of material fact exist as to whether TEI was relieved of its duty to examine its 2004-2005 insurance policy in minute detail. In this regard, TEI contends (a) that it relied on C&W's expertise; (b) that the parties had a special relationship; and (c) that Wilburn intentionally and/or negligently misrepresented the existence or extent of coverage orally and in writing.

> Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

So viewed, the record reflects that TEI is an owner and operator of boat sales and service facilities, docks, and resort facilities in Georgia and Indiana. Douglas Traina is the founder, chief executive officer, and sole owner of TEI. Traina first met Wilburn sometime in 1999 or 2000, and beginning with the policy period 2001-2002, obtained

---

[1] (Citations and punctuation omitted.) *Carterosa, Ltd. v. Gen. Star Indem. Co.*, 227 Ga. App. 246 (489 SE2d 83) (1997).

property insurance for TEI's various locations in Georgia and Indiana through Wilburn and his agency. The coverage was reviewed and renewed on a yearly basis. Traina testified that he never read the actual insurance policies, but extensively reviewed the "Insurance Program" summaries, prepared and presented by Wilburn for each policy year. At his deposition, Traina explained that he was solely responsible for TEI's insurance and that he specifically requested property insurance coverage for the collapse of piers, wharfs, or docks caused by the weight of snow, ice, and sleet, because TEI had suffered such losses in 1988 and 1992, when snowstorms in Atlanta caused extensive damage to TEI docks. For policy years 2002-2003 and 2003-2004, C&W obtained such coverage for TEI through Continental Casualty Company ("CNA"). However, on March 11, 2004, CNA sent written notice to C&W, explaining that TEI's coverage for the collapse of piers, wharfs, and docks would be reduced. The letter provided as follows:

> Our records indicate that your expiring policy contains our Piers, Wharfs and Docks Coverage Form G43805. At policy renewal your coverage form will change. Here is a summary of the reductions in coverage and clarification of coverage: . . . Coverage for collapse is now limited to collapse resulting from fire, lightning windstorm explosion, smoke, aircraft, vehicles, riot, civil commotion, vandalism, breakage of glass, or falling objects, but only as these causes of loss are covered in the form. Collapse that results from hidden decay, hidden insect or vermin damage, weight of people or personal property, weight of rain that collects on a roof, or use of defective materials in construction is not covered. . . . Exclusion has been added and coverage does not apply for weight or movement of ice, sleet, or snow, including ice, sleet or snow which is carried laterally or horizontally by water current or tidal influence.

C&W received the letter on March 15, 2004, and filed it away because, as Wilburn explained, "we were just beginning to work on other quotes." According to Traina, TEI never received this letter and was never advised of the change in coverage. Wilburn testified to the contrary that "[t]o the best of my knowledge, I believe that I did discuss the changes that were going to take place." During Wilburn's deposition, the following colloquy occurred:

Q. What do you believe you told [Traina] orally?

A. I believe that I told him that there was going to be some changes regarding the dock coverage, that would have a — a bearing on the ice and snow — the weight of ice and snow collapse coverage.

Q. Why do you think — well, first of all, let's find out, when you say you believe you told him —

A. Correct.

Q. Is there the possibility that you didn't tell him?

A. Yeah.

According to Wilburn, over the course of their relationship, TEI never specifically asked for coverage for collapse of docks caused by the weight of snow or ice. However, in an application for coverage submitted by C&W to Travelers Insurance on April 2, 2003, Wilburn specifically requested "Dock coverage (Replacement cost coverage including weight of ice and snow)" for TEI's Indiana facility. Wilburn explained that he made this request in an attempt to match coverage that was already in place.

Sometime before May 1, 2004, the expiration date for the 2003-2004 insurance policy, Traina met with Wilburn and asked that he obtain "renewal types of coverage with only a few minor changes (none of which involved the type of coverage for Traina's docks) [from the 2003-2004 insurance plan]." On May 7, 2004, Wilburn faxed to Traina a coverage summary of what was expected for TEI's 2004-2005 insurance plan. This summary did not mention the expected change in coverage as indicated by CNA's letter of March 11, 2004. After reviewing the summary of expected coverage, Traina agreed to purchase the insurance. Subsequently, the various policies were mailed to C&W, reviewed by Wilburn, and then delivered to TEI, along with a document prepared by Wilburn, titled "2004-2005 Insurance Program," which summarized the coverage provided and specifically stated that "[i]n the interest of simplicity, coverages are described briefly in this analysis. The extent of insurance coverage is at all times governed by the complete terms of the actual insurance policies." For the docks in question, the "2004-2005 Insurance Program" summary mirrors the "2003-2004 Insurance Program" summary, reflecting *all risk* insurance coverage for piers, wharfs, and docks with a limit of $1,530,000 for location "6-4" (the docks at TEI's Indiana facility). The final page of the "2004-2005 Insurance Program" summary includes the following typed comments, but makes no mention of the change in coverage for piers, wharfs, and docks: "CNA will exclude liability coverage for ATV's 4 to 6 months from effective date. Markel annual premium per boat approximately: $914 jet skis[.] Commercial Umbrella does not cover exposures where

underlying limit is less than $1,000,000 CSL." The change in coverage for piers, wharfs, and docks is noted on page 236 of the actual policy issued by CNA.

On or about December 23, 2004, several docks at TEI's Indiana facility collapsed following a heavy snowstorm. CNA denied coverage, stating that the loss was not covered because the damage occurred due to the "weight of snow" which was excluded from TEI's 2004-2005 insurance policy. A representative of CNA testified at her deposition that the loss would have been covered under TEI's 2003-2004 insurance policy, which included coverage for snow damage to docks. Claiming that Wilburn knew of the reduction in coverage in the 2004-2005 insurance policy, but failed to advise Traina of the change, TEI filed this action against C&W, alleging misrepresentation, negligent failure to procure insurance, and negligent failure to provide notice of reduction in coverage. The trial court granted C&W's motion for summary judgment, without explanation.

As a general rule, an insured has a duty to read and examine an insurance policy to determine whether the coverage requested was procured.[2] One exception to this rule arises

> when the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct amount or type of insurance, unless an examination of the policy would have made it "readily apparent" that the coverage requested was not issued.[3]

Other exceptions lie where "an agent intentionally misrepresents the existence or extent of coverage"[4] or where the evidence reflects a "special relationship of trust or other unusual circumstances which would have prevented or excused plaintiff of his duty to exercise ordinary diligence to ensure that no ambiguity existed between the requested insurance and that which was issued."[5]

The first exception does not apply here. Though TEI claims that Wilburn held himself out as expert in marina insurance and that it relied on Wilburn's expertise, it is clear from a reading of Traina's deposition that he is a very savvy businessman, who knows about

---

[2] *Jim Anderson & Co. v. ParTraining Corp.*, 216 Ga. App. 344, 345 (2) (454 SE2d 210) (1995).

[3] (Punctuation and footnotes omitted.) *Heard v. Sexton*, 243 Ga. App. 462, 463 (532 SE2d 156) (2000).

[4] (Citation omitted.) *Rogers & Sons, Inc. v. Santee Risk Managers*, 279 Ga. App. 621, 627 (2) (631 SE2d 821) (2006).

[5] (Punctuation and footnote omitted.) *Heard*, supra.

insurance and what kinds and amounts of insurance he wants and needs for his various business locations. The record belies Traina's assertion that he relied on Wilburn's expertise. Rather, it shows that Traina determined the appropriate amounts and scope of coverage for TEI, and that he did not rely on or authorize Wilburn to assess TEI's needs, offer recommendations, or unilaterally adjust coverage.[6] The second exception also is inapplicable as there is no evidence that Wilburn intentionally or fraudulently misrepresented the extent of TEI's coverage.

However, we find that the last exception applies because an unusual circumstance exists, specifically, Wilburn's voluntary practice of preparing a policy summary for TEI. Once Wilburn undertook that obligation, he was required to perform it in a nonnegligent manner. Based on the evidence before us, a jury could find that Wilburn breached this duty. In this regard, the record reflects (1) that Traina requested a renewal of TEI's existing policy, which included vital coverage for the collapse of docks caused by the weight of snow or ice; (2) that Wilburn told Traina that TEI "had gotten a renewal policy"; (3) that Wilburn expressly noted that the subject coverage was included in TEI's 2004-2005 insurance policy; and (4) that Wilburn failed to advise TEI of the change in coverage letter he received from CNA.

C&W argues that this case is controlled by *Canales v. Wilson Southland Ins. Agency*.[7] In that case, the insured sued his insurance agent for fraud and breach of fiduciary duty after he discovered that his automobile policy did not cover his vehicle in Mexico. We rejected the insured's claims that (1) there was a confidential relationship between the insured and his agent that would have "abrogated [the insured's] duty to read the [insurance] policy," and (2) the agent was guilty of intentional misrepresentation.[8] Unlike in this case, the

---

[6] See, e.g., *Hunt v. Greenway Ins. Agency*, 213 Ga. App. 14 (443 SE2d 661) (1994) (no evidence that agent had any discretion in the type of insurance procured or that the insured relied on the agent to decide what type of insurance was needed); *Ethridge v. Associated Mutuals, Inc.*, 160 Ga. App. 687 (288 SE2d 58) (1981) (agent performed no expert service when insured specified exact amount and type of coverage sought); *Fregeau v. Hall*, 196 Ga. App. 493, 494 (396 SE2d 241) (1990) (same); *Underwriters Adjusting Co. v. Knight*, 193 Ga. App. 759, 760 (2) (389 SE2d 24) (1989) (same). Compare *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 270 (210 SE2d 801) (1974) (reversing grant of summary judgment in action for negligent procurement of insurance where agent held himself out as an expert); *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28-29 (2) (561 SE2d 169) (2002) (reversing grant of summary judgment where evidence showed that insured relied on agent's expertise in determining adequate coverage); *Jim Anderson & Co.*, supra (issue of material fact existed as to whether expert exception applied; record reflected that insurance agent reviewed insured's financial information every year to assess types and amounts of coverage needed and agent had discretion to adjust policies without informing client).

[7] 261 Ga. App. 529 (583 SE2d 203) (2003).

[8] Id. at 531 (1), 533 (2).

insured in *Canales* did not allege that an unusual circumstance existed or that his agent was guilty of negligent misrepresentation. Additionally, the insurance agent specifically testified that he told the insured that his " 'coverage was not effective in Mexico.' "[9] Here, Wilburn himself admitted that he may not have advised TEI of the coverage change, and — contrary to C&W's contention — expressly noted on the 2004-2005 summary that TEI had all-risk coverage for its Indiana docks. For these reasons, we find that this case is distinguishable from *Canales*, and more similar to *Heard v. Sexton*,[10] where we held that genuine issues of material fact as to an insurance agent's statements about the exclusions in a health insurance policy precluded summary judgment on the insured's claim for negligent misrepresentation.[11] In that case, the insured met with his agent to discuss replacing his existing health insurance coverage. With the help of his agent, the insured applied for and was issued a policy excluding coverage for (1) rheumatic heart disease and (2) hyperlipoproteinemia. The insured met with the agent, concerned as to the meaning of the exclusions, and was assured that he was covered for any illness or condition other than a rheumatic heart problem. The insured subsequently required bypass surgery and filed suit when the insurer refused to cover the surgery under the second exclusion. C&W correctly points out that the insured in *Heard* had read his policy; however, in finding that an exception to the rule existed, it necessarily followed that TEI was excused of its duty to exercise ordinary diligence "to ensure that no ambiguity existed between the requested insurance and that which was issued."[12]

Because there is evidence from which a jury could find that Wilburn negligently misrepresented the extent of TEI's coverage, the trial court erred in granting summary judgment to C&W.

*Judgment reversed. Barnes, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 29, 2008 ▮

*C. Michael Johnson*, for appellant.

*Adorno & Yoss, Jeffrey W. Melcher, Owen, Gleaton, Egan, Jones & Sweeney, Charles J. Cole, Derrick L. Bingham*, for appellee.

---

[9] Id. at 530.

[10] Supra.

[11] Id. at 463, citing *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

[12] *Heard*, supra.