**FOURTH DIVISION**
**BOGGS, J.**
**RAY and McMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 1, 2015

# In the Court of Appeals of Georgia

A15A0182. COTTINGHAM & BUTLER, INC. v. BELU.          BO-079

BOGGS, Judge.

Aron and Lidia Belu, d/b/a Express Auto Transport, sued their insurance agents, Cottingham & Butler, Inc. and Cottingham & Butler Insurance Services, Inc. (collectively, "C&B"), for negligence and breach of contract in connection with their purchase of an insurance policy. C&B subsequently moved for summary judgment. The trial court denied the motion, and we granted C&B's application for interlocutory review. For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See *Rogers & Sons v. Santee Risk Managers*, 279 Ga. App. 621, 622 (631 SE2d 821) (2006). On appeal, we review a trial court's summary judgment ruling de novo, construing the

evidence and all reasonable inferences in the light most favorable to the nonmovant. See id.

So viewed, the evidence shows that the Belus emigrated to the United States from Romania in 1986. Once in America, they obtained commercial driver's licenses, bought a truck, and began driving for various companies. In 2002, the Belus formed their own truck driving business, Express Auto Transport ("Express Auto"), with Mr. Belu and Mrs. Belu's brother driving the trucks, and Mrs. Belu handling office duties.

At some point, Mrs. Belu called C& B and "asked them to sell [her] all the coverage" that she and her husband needed to protect their business. She told C&B that they "wanted a policy which covers everything, the trucks, the cars, the cargo . . . physical damage, liability, general liability, everything." Mrs. Belu, however, did not request particular coverage because she was not an expert. Instead, C&B's representative told her what she needed, and she purchased the recommended coverage. According to Mrs. Belu:

> When we were getting our insurance, [the C&B representative] would ask me "What kind of business you do?" and then tell me "You need this, and this, and this, and then you are covered, don't worry." He would tell me what I need in this kind of business.

C&B procured several policies for the Belus, including a cargo insurance policy issued by Underwriters at Lloyd's, London ("Lloyd's"). Mrs. Belu testified that she looked over the policies and is "pretty sure" she read them, but cannot remember "a hundred percent." Mr. Belu did not read the policies in their entirety.

In December 2007, while the Belus were insured by the Lloyd's cargo policy, a truck carrying a load of vehicles for Express Auto caught fire, damaging the vehicles. The vehicle owners sued Express Auto, and the Belus filed a claim under the cargo policy. Although Lloyd's eventually paid the Belus a certain amount to settle the lawsuits, it refused to assume the cost of defense. To support this refusal, Lloyd's cited the following policy provision:

> **PRIVILEGE TO ADJUST WITH OWNER –** In the event of loss or damage to property of others held by the Insured for which claim is made upon the Underwriters the right to adjust such loss or damage with the owner or owners of the property is reserved to the Underwriters and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Insured for which such payment has been made. *If legal proceedings be taken to enforce a claim against the Insured as respects any such loss or damage, the Underwriters reserve the right at their option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured.* No action of the Underwriters in such regard shall increase the liability of

3

the Underwriters under this Policy, nor increase the limits of liability specified in the Policy.

(Emphasis supplied.)

Lloyd's filed a declaratory judgment action in federal district court, seeking a determination that it had no duty to defend the Belus in the lawsuits. See *Certain Underwriters at Lloyd's, London v. Belu*, 2009 U. S. Dist. LEXIS 77282, at *5 (N. D. Ga. 2009). Based on the provision quoted above, the district court found that "the unambiguous language of the policy plainly means that the insurer has the option not to provide a defense." Id. at *12. It thus concluded that Lloyd's was not required to defend the Belus. See id.

Following the district court's ruling, the Belus sued C&B, alleging that it failed to procure adequate insurance coverage that included a duty to defend. C&B moved for summary judgment. It argued that the Belus were obligated to read the policy and, if they had, they would have known that Lloyd's had the option – not a duty – to defend them against any claims. The trial court denied the motion, but issued a certificate of immediate review. We granted C&B's interlocutory application, and this appeal followed.

1. As a general rule, an insurance agent who procures insurance, but fails to obtain all of the requested coverage, is insulated from liability if the insured does not read the policy. See *Turner, Wood & Smith v. Reed*, 169 Ga. App. 213, 214 (311 SE2d 859) (1983). This is because an insured has a duty to read and examine an insurance policy to determine whether it provides all of the coverage sought. See *Traina Enterprises v. Cord & Wilburn, Inc.*, 289 Ga. App. 833, 837 (2) (658 SE2d 460) (2008). The general rule, however, has several exceptions, including:

> when the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct amount or type of insurance, unless an examination of the policy would have made it readily apparent that the coverage requested was not issued.

(Citation, punctuation, and footnote omitted.) Id.[1]

The Belus argued below, and the trial court found, that regardless of whether they read the Lloyd's policy, questions of fact remain as to their reliance on C&B's

---

[1]"Other exceptions apply when an agent intentionally misrepresents the existence or extent of coverage or when the evidence reflects a special relationship of trust or other unusual circumstances which would have prevented or excused plaintiff of his duty to exercise ordinary diligence to ensure that no ambiguity existed between the requested insurance and that which was issued." (Citation, punctuation, and footnote omitted.) Id.

expertise in identifying and procuring adequate insurance for them. C&B challenges this finding on appeal, asserting that it was entitled to summary judgment because, as a matter of law, it never offered expert advice to the Belus. We disagree.

C&B asserts that an insurance agency does not hold itself out as an expert unless it "behave[s] more like a business partner with the insured: auditing a company, analyzing their needs, and recommending a course of action." It is true that, in several cases cited by C&B, the insurance agency reviewed business audits and financial information in connection with coverage recommendations. See, e.g., *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 271 (210 SE2d 801) (1974) (insurance agency reviewed annual business audits of insured to determine whether insurance policies were sufficient); *Jim Anderson & Co. v. ParTraining Corp.*, 216 Ga. App. 344, 345 (1) (454 SE2d 210) (1995) (insurance agency reviewed insured's financial information to ascertain appropriate coverage and had discretion to adjust coverage). Our case law, however, does not limit the expertise exception to the narrow scope suggested by C&B.

In *McCoury v. Allstate Ins.* Co., 254 Ga. App. 27, 29 (2) (561 SE2d 169) (2002), for example, we found that an insurance agent was not entitled to summary judgment on a negligent procurement claim because the insured parties offered

6

evidence that they relied on the agent's expertise in determining whether coverage was adequate. And in *Hunt v. Greenway Ins. Agency*, 213 Ga. App. 14, 15 (443 SE2d 661) (1994), summary judgment for the insurance agency was appropriate when the insured presented "no evidence that the agent had any discretion in the type of insurance procured or that the proposed insured relied on the agent to decide what type of insurance was needed." Nothing in these or similar cases restricts the expertise exception to situations involving the equivalent of a business partnership between the insured and the insurance agency, or requires that an insured "turn[] his business records over to an agent," as C&B contends. On the contrary, the exception applies when an insurance agent "has undertaken to perform an additional service," beyond merely procuring specified insurance, "such as determining the amount of insurance required, and the insured relies upon the agent to perform that service." *Fregeau v. Hall*, 196 Ga. App. 493, 494 (396 SE2d 241) (1990).

The Belus presented at least some evidence they that relied on C&B to assess their insurance needs in this case. According to Mrs. Belu, she did not request any particular amount of coverage. She depended upon a C&B representative to determine the type and amount of insurance Express Auto needed. And once the representative made that determination, he instructed her not to worry because she

was "covered." Although C&B claims that it simply procured insurance for the Belus, this evidence raises questions of fact as to whether the agency went beyond mere procurement and offered expert advice upon which the Belus relied. See *McCoury*, supra; compare *Traina*, supra at 838 (2) (no evidence of reliance on insurance agency's expertise where insured calculated amount and type of insurance needed and did not authorize agent to assess these needs, offer recommendations, or adjust coverage); *Brasington v. King*, 167 Ga. App. 536, 538 (1) (307 SE2d 16) (1983) (no expertise exception where agent did not "complete any analysis of plaintiff's insurance needs"), aff'd, *King v. Brasington*, 252 Ga. 109 (312 SE2d 111) (1984); *Ethridge v. Associated Mutuals, Inc.*, 160 Ga. App. 687, 689 (288 SE2d 58) (1981) (expertise exception did not apply where insured told agent amount and type of coverage he desired, leaving no discretion to agent).

2. Alternatively, C&B argues that the absence of a duty to defend was readily apparent on the face of the cargo policy, precluding recovery. As noted by C&B, the expertise exception only relieves the insured "of the responsibility to minutely examine the policy." (Citations and footnote omitted.) *MacIntyre & Edwards, Inc. v. Rich*, 267 Ga. App. 78, 81 (1) (599 SE2d 15) (2004). Thus, if examination of the policy would have made it "readily apparent that the insured did not get the coverage

8

he requested, the duty to read will still bar a lawsuit against the agent even if the insured relied upon the agent's expertise." (Citations and footnote omitted.) Id.

According to C&B, the Belus' policy clearly and unambiguously provided Lloyd's with an option to defend, rather than a duty to defend. Undoubtedly, the absence of such duty may be inferred from the policy language giving Lloyd's the "option without expense to the insured to conduct and control the defense on behalf of and in the name of the Insured." . But the lack of duty is not specifically stated, only implied. Moreover, the provision at issue is located in the middle of a paragraph entitled "**PRIVILEGE TO ADJUST WITH OWNER**", and is combined with a different provision, Lloyd's stated intention to "conduct and control the defense without expense to the insured." Neither the paragraph nor its heading explicitly references or excludes a duty to defend, and Mrs. Belu testified that she did not understand the operative language.

We recognize that the federal district court adjudicating Lloyd's declaratory judgment action found that the policy language unambiguously gave Lloyd's the option not to defend the Belus as a matter of law. See *Belu*, supra. But even if the option language was found to be unambiguous, the key inquiry is not whether a court or an insurance expert could determine the import of the provision. Rather, here we

9

must consider whether "it would have been readily apparent to a layman reading the insurance policy, based upon the plain and ordinary meaning of clear and unambiguous language, that the risk causing the loss was not covered." (Citations omitted.) *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 5 (427 SE2d 18) (1992). Given the phrasing of the option language, its location in the middle of a paragraph entitled "Privilege to Adjust with Owner," and Mrs. Belu's testimony that she did not fully comprehend the paragraph, we agree with the trial court that a jury question remains on this issue. See *Jim Anderson & Co.*, supra, 216 Ga. App. at 345-346 (2) (jury question remained as to whether lack of coverage was readily apparent); compare *Rogers*, supra, 279 Ga. App. at 627 (2) (lack of coverage for machinery was readily apparent, given separately listed policy language, in large print, that explicitly and repeatedly drew insured's attention to coverage requirement); *MacIntyre & Edwards*, supra, 267 Ga. App. at 81 (1) (policy change was readily apparent when renewal endorsement outlined changes, accompanying memorandum offered further explanation, as well as bold-faced type drawing insured's attention to change, and insured, an insurance executive, admitted he would have understood the change had he read the renewal information). Accordingly, the trial court properly denied C&B's motion for summary judgment.

10

*Judgment affirmed. Ray and McMillian, JJ., concur.*