**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 19, 2019**

# In the Court of Appeals of Georgia

A18A1915. UNIQUE AUTO SALES, LLC ET AL. v. DUNWODY
    INSURANCE AGENCY ET AL.

BARNES, Presiding Judge.

Unique Auto Sales, LLC and its owner/operator Justin Campbell appeal the summary judgment entered against them and in favor of Dunwody Insurance Agency and its agent, Thomas McEachern. At issue is whether the insurance parties can be held liable for failure to procure certain insurance coverage for Unique Auto Sales. The trial court answered no to this question. For reasons explained below, we reverse.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "In our de novo

review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

So viewed, the record shows the following. Unique Auto Sales is a wholesaler of used automobiles. It buys used vehicles from various sources, then shops for business purchasers of those vehicles, then delivers the vehicles – typically, on a "consignment" basis – to those purchasers at their designated locations. With respect to the size of the enterprise, during 2017, Unique Auto Sales was selling as many as 600 vehicles per month. Campbell was operating Unique Auto Sales out of his Georgia residence, but almost none of the business's vehicles were stored at that location.

For about five years, Unique Auto Sales delivered vehicles to High Line Motors, located in South Carolina and owned by Michael Alexon. During those years, Unique Auto Sales would consign vehicles to the South Carolina enterprise and receive payments after that company executed sales.[1] Then in 2015, the South

_____

[1] Campbell deposed that sometimes there was a "straight sale" in that "[Alexon] would buy a car and I would sell it."

Carolina company ceased paying Unique Auto Sales for vehicles that had been delivered to its designated South Carolina location. Seven of those vehicles were never recovered, and Unique Auto Sales calculated a loss of approximately $230,000.

To recoup its loss, Unique Auto Sales filed a claim with its insurance company, Utica National Insurance Group. The insurance company denied the claim. In a letter to Campbell dated November 18, 2015, Utica National Insurance Group set out certain policy provisions, including an exclusion that the insurance company would not pay for:

> "Loss" to any covered 'auto' displayed or stored at any location not shown in Item Three of the Declarations if the 'loss' occurs more than 45 days after *your use of the location begins*.[2]

It is undisputed that "Item Three of the Declarations" listed only Campbell's Georgia residence. Hence, as Appellants Unique Auto Sales and Campbell maintain in their joint appellate brief, "Utica issued a policy with an exclusion for autos displayed or

---

[2] While the letter displays emphasis as shown above, the Appellants' joint brief to this Court footnotes: "emphasis added."

3

stored on premises other than Unique Auto's listed address, which happened to be Campbell's home."[3]

In this lawsuit, Unique Auto Sales and Campbell (collectively, the "Automobile Plaintiffs") sought to recoup the loss from the insurance agency and its agent who procured the insurance policy – Dunwody Insurance Agency and Thomas McEachern (collectively, "Insurance Defendants"). The Automobile Plaintiffs alleged that the Insurance Defendants knew Unique Auto Sales' business model; that in about 2012, the Insurance Defendants secured an insurance policy for Unique Auto Sales from Utica National Insurance Group; that the policy remained in effect at the time of the claimed loss; that the Insurance Defendants had repeatedly assured the Automobile Plaintiffs that the coverage provided by the policy was appropriate for Unique Auto Sales; that the Automobile Plaintiffs relied on those assurances; that the insurance policy procured by the Insurance Defendants provided Unique Auto Sales with virtually no coverage; and that the Automobile Plaintiffs had consequently suffered

---

[3] Similarly, Appellees Dunwody Insurance Agency and its agent McEachern point out in their joint appellate brief, "Appellants never listed the South Carolina address for Highline Motors, even after using it for over 5 years to consign vehicles for sale there."

a loss of nearly $230,000. The Automobile Plaintiffs thus sought to recover damages from the Insurance Defendants under theories of negligence and breach of contract.

During discovery, Campbell recounted that he had procured the policy at issue in 2012, and had renewed coverage through 2016. He admitted that he had read the entirety of neither the initial policy nor any renewal documentation. He asserted, however, that the insurance agency and its agent were experts, and so he relied on the instruction and expertise of McEachern (the insurance agent) who repeatedly assured him that Unique Auto Sales was adequately covered.

The Insurance Defendants filed a motion for summary judgment, arguing that Campbell was obligated to read the policy, and that had he done so, he would have ascertained that the type of loss claimed here was not covered.

> As a general rule, an insurance agent who procures insurance, but fails to obtain all of the requested coverage, is insulated from liability if the insured does not read the policy. This is because an insured has a duty to read and examine an insurance policy to determine whether it provides all of the coverage sought. The general rule, however, has several exceptions, including: [w]hen the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct amount or type of insurance, *unless* an examination of the policy would have made it readily apparent that the coverage requested was not issued.

5

(Citations and punctuation omitted; emphasis supplied.) *Cottingham & Butler, Inc. v. Belu*, 332 Ga. App. 684, 686-687 (1) (774 SE2d 747) (2015).

In its order granting summary judgment to the Insurance Defendants, the trial court found that there was no dispute that Campbell had not read the entire policy, and that there was "some evidence of reliance by [the Automobile] Plaintiffs on Mr. McEachern in assessing their insurance needs." The court then set out as dispositve:

> The Court finds [that] no genuine issues of material fact exist regarding whether the exclusion provision was "readily apparent." The "Exclusion" provision of the Policy is plain and unambiguous. The exclusion provision is under a main heading title "PHYSICAL DAMAGE" in bold print and the subheading titled "Exclusions."

In this appeal, the Automobile Plaintiffs contend that the grant of summary judgment was not authorized. They assert that there was no evidence of "the actual context in which the exclusion appears, let alone of its conspicuity," because the record did not contain the full policy. The Insurance Defendants make no assertion that the policy was presented to the trial court;[4] instead, they cite that the exclusion,

---

[4] See generally Court of Appeals Rule 25 (b) ("Part One [of appellee's brief] shall point out any material inaccuracy or incompleteness of appellant's statement of facts and any additional statement of facts deemed necessary, plus citations to additional parts of the record or transcript deemed material. Failure to do so shall constitute consent to a decision based on the appellant's statement of facts. Except

6

as well as various policy provisions that immediately preceded the exclusion, were set forth in Utica National Insurance Group's letter to Campbell, wherein the insurance company took the position that the claimed loss was not covered.[5]

It is apparently undisputed that the policy in effect at the time of the loss included the language cited within the letter. And the trial court expressly found in its order, "The 'Exclusion' provision of the Policy is plain and unambiguous."

> But . . . the key inquiry is not whether a court or an insurance expert could determine the import of the provision. Rather, here we must consider whether it would have been readily apparent to a layman *reading the insurance policy*, based upon the plain and ordinary meaning of clear and unambiguous language, that the risk causing the loss was not covered.

(Citation and punctuation omitted; emphasis supplied.) *Cottingham & Butler, Inc.*, 332 Ga. App. at 689 (1). It is well settled that, under Georgia law, "[t]he duty to read

---

as controverted, appellant's statement of facts may be accepted by this Court as true."), (c) (2) (ii) ("A contention that certain matters are not supported by the record may be answered by reference to particular pages where the matters appear.").

[5] In seeking summary judgment, the Insurance Defendants stated in their motion that they were relying upon, among other things, the "Commercial Auto Coverage Policy . . . attached hereto as Exhibit B." The referenced exhibit does not appear to be the entire policy; the Insurance Defendants do not assert that the document is the entire policy; in fact, the Insurance Defendants do not cite that document for any purpose on appeal.

remains where an *examination of the policy* would have made it readily apparent that the coverage contracted for was not issued." *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 5 (427 SE2d 18) (1992) (citation and punctuation omitted; emphasis supplied); see *Cottingham & Butler, Inc.*, 332 Ga. App. 688 (2) ("[I]f *examination of the policy* would have made it readily apparent that the insured did not get the coverage he requested, the duty to read will still bar a lawsuit against the agent even if the insured relied upon the agent's expertise.") (citation and punctuation omitted; emphasis supplied).

In this case, the policy does not appear in the record. And even accepting as undisputed that the language incorporated in the letter set forth policy provisions, and further presuming that the letter engrafted all the visual attributes of those provisions,[6] the whole of the excerpt incorporated in the letter nevertheless lacks meaningful contextual relationship to the overall policy. What is more, the numbering schematic of the excerpt makes it evident that even *it* (the excerpt) has omitted provisions that appeared within that portion of the policy.

---

[6] As detailed above, the trial court found that "[t]he exclusion provision is under a main heading title 'PHYSICAL DAMAGE' in bold print and the subheading titled 'Exclusions.'" See further, however, footnote 2, supra (finding it unclear as to whether emphasis displayed in letter was actually set forth in policy).

8

"Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." *Cowart*, 287 Ga. at 624 (1) (a). Given the circumstances here,[7] we conclude that the proof submitted was insufficient to demonstrate the absence of a genuine issue as to whether, upon examination of the policy, it would have been readily apparent to a layman that the coverage requested had not been issued. See *Crawford v. Lawyers Title Ins. Corp.*, 296 Ga. App. 459, 460 (675 SE2d 232) (2009) (although the "pertinent exclusion" was in the record, the policy – the "critical document" upon which the movant and trial court relied for grant of summary judgment – was obviously incomplete, rendering the proof submitted insufficient to demonstrate the absence of a genuine issue as to any material fact); *Meeler v. Natl. Ins. Assoc.*, 207 Ga. App. 133, 133-134 (427 SE2d 103) (1993) (grant of summary judgment reversed, where the issues related in large part to proper construction of the insurance policy at issue, yet insufficient information as to the language of the insurance contract was included in the evidence of record). Accord *Adana Mort.*

_____

[7] Accord *Pfeiffer v. Ga. DOT*, 275 Ga. 827, 830 (3) (573 SE2d 389) (2002) (reaffirming that "[w]hen the record fails to contain the facts supporting the grant of summary judgment, the non-movant may argue this ground to the appellate court regardless of whether the non-movant asserted an 'objection to the prima facie case'").

9

*Bankers v. Bankers Ins. Serv. Corp*., 186 Ga. App. 76, 76-77 (366 SE2d 408) (1988).

For the foregoing reasons, the trial court's grant of summary judgment based on its determination that the exclusion was "readily apparent" was not authorized.

*Judgment reversed. Reese, J., concurs and McMillian, J., concurs in judgment only.\**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**