**THIRD DIVISION**
**MERCIER, C. J.,**
**DOYLE, P. J. and GOBEIL, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 9, 2023**

# In the Court of Appeals of Georgia

A23A0697. UNIQUE AUTO SALES, LLC et al. v. DUNWODY INSURANCE AGENCY et al.

DOYLE, Presiding Judge.

This is the second time this case has come before us. In the first appeal, Unique Auto Sales, LLC and its owner/operator, Justin Campbell, appealed the summary judgment entered against them and in favor of Dunwody Insurance Agency and its agent, Thomas McEachern. This Court reversed the trial court's ruling because there was no record evidence of the complete insurance policy at issue to authorize the trial court's determination that a policy exclusion was "readily apparent." *Unique Auto Sales v. Dunwody Ins. Agency*, 348 Ga. App. 656, 660-661 (824 SE2d 578) (2019) (physical precedent only). Following remand, the trial court again granted summary

judgment to the insurer, and Unique Auto Sales and Campbell appeal this ruling. For the reasons that follow, we affirm.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Unique Auto Sales*, 348 Ga. App. at 657 (citation and punctuation omitted).

So viewed, we recite the facts as stated in our prior opinion:

Unique Auto Sales is a wholesaler of used automobiles. It buys used vehicles from various sources, then shops for business purchasers of those vehicles, then delivers the vehicles — typically, on a "consignment" basis — to those purchasers at their designated locations. With respect to the size of the enterprise, during 2017, Unique Auto Sales was selling as many as 600 vehicles per month. Campbell was operating Unique Auto Sales out of his Georgia residence, but almost none of the business's vehicles were stored at that location.

2

For about five years, Unique Auto Sales delivered vehicles to High Line Motors, located in South Carolina and owned by Michael Alexon. During those years, Unique Auto Sales would consign vehicles to the South Carolina enterprise and receive payments after that company executed sales. Then in 2015, the South Carolina company ceased paying Unique Auto Sales for vehicles that had been delivered to its designated South Carolina location. Seven of those vehicles were never recovered, and Unique Auto Sales calculated a loss of approximately $230,000.

To recoup its loss, Unique Auto Sales filed a claim with its insurance company, Utica National Insurance Group. The insurance company denied the claim. In a letter to Campbell dated November 18, 2015, Utica National Insurance Group set out certain policy provisions, including an exclusion that the insurance company would not pay for:

"Loss" to any covered "auto" displayed or stored at any location

not shown in Item Three of the Declarations if the "loss" occurs

more than 45 days after *your use of the location begins*.

It is undisputed that "Item Three of the Declarations" listed only Campbell's Georgia residence. . . .

In this lawsuit, Unique Auto Sales and Campbell (collectively, the "Automobile Plaintiffs") sought to recoup the loss from the insurance agency and its agent who procured the insurance policy — Dunwody

3

Insurance Agency and Thomas McEachern (collectively, "Insurance Defendants"). The Automobile Plaintiffs alleged that the Insurance Defendants knew Unique Auto Sales' business model; that in about 2012, the Insurance Defendants secured an insurance policy for Unique Auto Sales from Utica National Insurance Group; that the policy remained in effect at the time of the claimed loss; that the Insurance Defendants had repeatedly assured the Automobile Plaintiffs that the coverage provided by the policy was appropriate for Unique Auto Sales; that the Automobile Plaintiffs relied on those assurances; that the insurance policy procured by the Insurance Defendants provided Unique Auto Sales with virtually no coverage; and that the Automobile Plaintiffs had consequently suffered a loss of nearly $230,000. The Automobile Plaintiffs thus sought to recover damages from the Insurance Defendants under theories of negligence and breach of contract.

During discovery, Campbell recounted that he had procured the policy at issue in 2012, and had renewed coverage through 2016. He admitted that he had read the entirety of neither the initial policy nor any renewal documentation. He asserted, however, that the insurance agency and its agent were experts, and so he relied on the instruction and expertise of McEachern (the insurance agent) who repeatedly assured him that Unique Auto Sales was adequately covered.

*Unique Auto Sales*, 348 Ga. App. at 657-658.

4

Following remand, the Insurance Defendants filed a second renewed motion for summary judgment and provided complete copies of the insurance renewal policies, with all declarations and documents included.[1] These renewal policies, which were identical, incorporated a "Supplemental Declarations" page listing the forms and endorsements applying to the coverage, including Garage Coverage Form CA0005. This form advised insureds that "[v]arious provisions of this policy restrict coverage" and instructed insureds to "[r]ead the entire policy carefully to determine rights, duties and what is and is not covered." Section IV (B) of the form lists "**Exclusions**" in bold type. And subpart (5) (b) of that Section unambiguously indicates: "We will not pay for . . . 'Loss' to any covered 'auto' displayed or stored at any location not shown in Item Three of the Declarations if the 'loss' occurs more than 45 days after your use of the location begins." The Automobile Plaintiffs admitted that they had been delivering vehicles to High Line Motors in South Carolina for over five years, yet Item Three of the Declarations points to "LOCATIONS WHERE YOU CONDUCT GARAGE OPERATIONS - See

---

[1] The Insurance Defendants initially filed a renewed motion for summary judgment when the case was remitted to the trial court, but the court denied that motion because one of the attached letters referenced a document still not included in the record.

SCHEDULE A[,]" and Schedule A lists one address: 8824 Estes Road, Campbell's home office in Georgia.

Following a hearing, the trial court granted the Insurance Defendants' motion for summary judgment, noting that all insurance forms were now included in the record and that the court was able to assess the relevant exclusion within its context in the policy as a whole. The trial court concluded that "it would have been readily apparent" from the insurance policy that losses occurring to vehicles housed in South Carolina beyond 45 days after the Automobile Plaintiffs started using that location were not covered because the policy "specifically excludes coverage for vehicles garaged at unlisted addresses," and no address was listed except Unique Auto Sales's place of business in Georgia. The Automobile Plaintiffs appeal this ruling.

1. In related enumerations of error, the Automobile Plaintiffs assert that they had no duty to "examine minutely" the policy and that the policy exclusion for losses they incurred in South Carolina was not "readily apparent." Pretermitting whether the Automobile Plaintiffs' reliance on the Insurance Defendants' expertise relieved them of the duty to *minutely* examine the policy, it did not relieve them of their responsibility to examine the policy for readily apparent exclusions. See *MacIntyre & Edwards v. Rich*, 267 Ga. App. 78, 81-82 (1) (599 SE2d 15) (2004) (although an

6

insured who relies on an agent who holds himself out as an expert is relieved of the responsibility to "minutely" examine the policy, the insured still has a duty to read the policy for readily apparent policy changes). Here, the Automobile Plaintiffs stipulated that they did not read the policy, and we agree with the trial court that the exclusion at issue in this appeal was readily apparent and bars coverage.

Under Georgia law, "an insured has a legal duty to examine his contract, observe what coverage it provided to him, and, if the coverage was not correct, either reject the policy as written when tendered or renegotiate his contract with the insurer." *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 481 (1) (c) (759 SE2d 557) (2014) (citation and punctuation omitted). Accordingly, "an insurance agent who procures insurance, but fails to obtain all of the requested coverage, is insulated from liability if the insured does not read the policy." *Unique Auto Sales*, 348 Ga. App. at 659 (citation and punctuation omitted). However, an exception to this general rule exists "when the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct amount or type of insurance, *unless* an examination of the policy would have made it readily

7

apparent that the coverage requested was not issued."[2] Id. (citation and punctuation omitted). This expertise exception "only relieves the insured of the responsibility to minutely examine the policy." *Cottingham & Butler v. Belu*, 332 Ga. App. 684, 688 (2) (774 SE2d 747) (2015) (citation and punctuation omitted). It does not relieve the insured of his responsibility to examine the policy for readily apparent exclusions. Id.; *Rich*, 267 Ga. App. at 81-82 (1). In other words, "if examination of the policy would have made it readily apparent that the insured did not get the coverage he requested, the duty to read will still bar a lawsuit against the agent even if the insured relied upon the agent's expertise." *Belu*, 332 Ga. App. at 688 (2) (citation and punctuation omitted).

A policy provision is "readily apparent" if it is "plain and unambiguous." *Four Seasons Healthcare v. Willis Ins. Svcs. of Ga.*, 299 Ga. App. 183, 186 (682 SE2d 316) (2009) (citation and punctuation omitted). In determining whether the exclusion at issue here was readily apparent,

---

[2] For purposes of this appeal, we assume that McEachern held himself out as an expert and that the Automobile Plaintiffs relied on his expertise, notwithstanding the Insurance Defendants' arguments to the contrary, including their claim that Campbell worked for five years in the claims department of a major insurance company.

the key inquiry is not whether a court or an insurance expert could determine the import of the provision. Rather, . . . we must consider whether it would have been readily apparent to a layman reading the insurance policy, based upon the plain and ordinary meaning of clear and unambiguous language, that the risk causing the loss was not covered.

*Belu*, 332 Ga. App. at 689 (2) (citation and punctuation omitted).

(a) The Automobile Plaintiffs argue for the first time on appeal that the exclusion was not "readily apparent" because they were never provided a full copy of the insurance policy, including all exclusions, by the Insurance Defendants. This argument, however, has been waived because it was not raised in the trial court. See *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) (arguments not raised in the trial court are waived). Moreover, "insureds are charged with knowledge of the insurance policy's contents, and are bound by those contents even if they do not have physical possession of the policy." *Martin v. Chasteen*, 354 Ga. App. 518, 520 (2) (a) (841 SE2d 157) (2020) ("Insured persons under an insurance policy are presumed to know its conditions if they intend to rely upon its benefits, or else they must find out those conditions. That

is particularly true when, as in this case, the policy in issue is a renewal policy.") (citations and punctuation omitted).

(b) The Automobile Plaintiffs next argue that the exclusion was not readily apparent because (i) it was typed in the same print as the policy's normal print, "lacking any emphasis," (ii) no cover letter or memorandum pointed to the exclusion, and (iii) there is no evidence indicating the Automobile Plaintiffs were aware of any exclusions. While the decisions cited by the Automobile Plaintiffs in support of this claim involved documents or print highlighting exclusions, changes, or conditions in insurance policies,[3] the Automobile Plaintiffs cite no authority holding that exclusions *must* be highlighted to be "readily apparent." In fact, whether an exclusion is readily apparent does not turn on the "conspicuity" of the language, but instead turns on "the plain and ordinary meaning of clear and unambiguous language." *Belu*, 332 Ga. App. at 689 (2) (citation and punctuation omitted).

---

[3] See, e.g., *Four Seasons Healthcare*, 299 Ga. App. at 186-187 (insured was aware of some policy exclusions and therefore deemed aware of related exclusions); *Rogers & Sons, Inc. v. Santee Risk Managers*, 279 Ga. App. 621, 622-623 (631 SE2d 821) (2006) (insurance policy set forth "Special Conditions" of coverage and on the "Covered Equipment Schedule" indicated that two of the four pieces of equipment for which the plaintiff sought coverage were "SUBJECT TO" one of the special conditions); *Rich*, 267 Ga. App. at 80-81 (1) (insurance policy changes were readily apparent due to large, bold headings that highlighted them).

Here, the "Supplemental Declarations" page of the insurance policy lists "Forms and Endorsements applying to [the relevant] Coverage Part and made part of [each] policy at time of issue[.]" "Garage Coverage Form" CA0005 is listed as the second form. This title clearly alerts an insured — especially an insured in the used car business — that it addresses potential coverage limitations for places where automobiles are stored. And the very first sentence of this form states: "Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." Section IV of this form is titled, in capital letters, "PHYSICAL DAMAGE COVERAGE," and addresses damage to or loss of vehicles covered under the policy, subsection (B) lists "**Exclusions**" in bold type, and as discussed above, subpart (5) (b) of that Section clearly and unambiguously indicates: "We will not pay for . . . 'Loss' to any covered 'auto' displayed or stored at any location not shown in Item Three of the Declarations if the 'loss' occurs more than 45 days after your use of the location begins." There is no dispute that the only address listed in Schedule A, referred to in Item Three of the Declarations, is Campbell's Georgia address.

Although the insurance policy required a bit of cross-referencing to ascertain the exclusion at issue in this case, the exclusion was based on "the plain and ordinary

11

meaning of clear and unambiguous language" and was readily apparent. *Belu*, 332 Ga. App. at 689 (2) (citation and punctuation omitted). The insured did not need to *minutely* examine the policy. In fact, even a cursory look at page five of the policy — labeled, in capital letters, "LOCATIONS WHERE YOU CONDUCT GARAGE OPERATIONS" — showed that only Campbell's Georgia address was listed, which should have alerted the Automobile Plaintiffs that the policy may not cover other locations. Contrary to the Automobile Plaintiffs' argument, the exclusion at issue was readily apparent.

2. The Automobile Plaintiffs contend that "[n]o layman would understand the [exclusion] to apply to deliveries of motor vehicles to third parties, where the insured does not use the third party's location." Specifically, they cite the exclusion — a loss is not covered if it "occurs more than 45 days **after your use of the location begins**" — to argue that the exclusion applies only to locations the insured is "using," not locations someone else is using. (Emphasis in original). According to the Automobile Plaintiffs, consignment law does not contemplate that a consignor "uses" the location of the consignee. Given the circumstances of this case, we find the Automobile Plaintiffs' argument unavailing.

12

First, the exclusion defines "use" as the display or storage of cars by excluding coverage for "'Loss' to any covered 'auto' displayed or stored at any location not shown in Item Three of the Declarations if the 'loss' occurs more than 45 days after your use of the location begins." There is no dispute that the Automobile Plaintiffs gave vehicles to High Line Motors in South Carolina, which then sold the vehicles on behalf of the Automobile Plaintiffs. Thus, contrary to the Automobile Plaintiffs' argument, they "used" — by displaying or storing their vehicles — an address other than the one listed on page five of the policy: "LOCATIONS WHERE YOU CONDUCT GARAGE OPERATIONS." This is not an instance where an individual shipped or delivered purchased goods to an address; the Automobile Plaintiffs had a "contractual relationship" with the South Carolina entity, and the Automobile Plaintiffs used that entity's location pursuant to the contractual relationship. Accordingly, the Automobile Plaintiffs' assertion that they did not "use" High Line Motors' address in South Carolina is simply wrong.

Second, in a passing reference, the Automobile Plaintiffs appear to assert for the first time that the Insurance Defendants' reading of the 45-day clause in the exclusion is not readily apparent because the clause could be read "as relating the exclusion to each vehicle separately, so that it applied to '[v]ehicles stored at a

13

location for more than 45 days[,]'" and that, when they delivered vehicles to High Line Motors' premises for consignment, they did not contemplate that the vehicles "were likely to stay at the same location for 45 days." But whether or not the Automobile Plaintiffs contemplated how long a vehicle might remain at the South Carolina location does not affect whether or not it was readily apparent that the policy did not cover vehicles that remained in an undeclared location more than 45 days. The Insurance Defendants repeatedly argued in the trial court that the Automobile Plaintiffs began using the South Carolina location several years before the losses at issue here occurred and that the policy specifically excludes losses if they occur "more than 45 days after your use of the location begins." The Automobile Plaintiffs did not dispute this interpretation of when the 45 days began to run — from the initial use of the South Carolina location, not the storage of each individual vehicle — in the trial court. Instead, the Automobile Plaintiffs argued only that they were not required to read the policy because the insurance agent held himself out as an expert and they relied on the agent's expertise and representations.

To the extent that the Automobile Plaintiffs argue for the first time on appeal that the 45-day clause applies to individual vehicles and not to their first use of the South Carolina location, they have waived this argument. "It is well settled that

14

appellate courts will not consider new arguments in opposition to a motion for summary judgment raised for the first time on appeal." *Crowe v. Scissom*, 365 Ga. App. 124, 142 (2), n. 10 (877 SE2d 659) (2022) (citation and punctuation omitted).

> Each party has a duty to present his best case on a motion for summary judgment. Our Supreme Court has specifically held that, in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case.

*Sure, Inc. v. Premier Petroleum*, 343 Ga. App. 219, 228 (2) (807 SE2d 19) (2017) (citation and punctuation omitted). Because the Automobile Plaintiffs' argument regarding the nature of the 45-day clause was not raised in the trial court, we will not consider it here.[4] See *Simmons v. Universal Protection Svcs.*, 349 Ga. App. 374, 381 (3) (825 SE2d 858) (2019). The trial court did not err in granting summary judgment to the Insurance Defendants in this case.

*Judgment affirmed. Mercier, C. J., and Gobeil, J., concur.*

---

[4] We reiterate that the 45-day clause is readily apparent regardless of the Automobile Plaintiffs' reading of the language, and their argument regarding when the clause begins has no bearing in this case against the agent for negligent procurement of adequate coverage and breach of contract. See *Belu*, 332 Ga. App. at 688 (2) (the duty to read bars a lawsuit against an insurance agent — even if the insured relied on the agent's expertise — if examination of the policy would have made it readily apparent that the insured did not get the coverage he requested).